UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

HAKIM R. NELSON,

                Plaintiff,

v.

EAST JERSEY STATE PRISON, *et. al.*,

                Defendants.

**Civil Action No. 23-20944 (JXN) (JBC)**

**OPINION**

**NEALS**, District Judge

      This matter comes before the Court on Defendants Department of Corrections (the "DOC"), East Jersey State Prison (the "State Prison"), Patrick Nogan ("Nogan"), and James Russo's ("Russo") (collectively the "Defendants") motion to dismiss Plaintiff Hakim Nelson's ("Plaintiff") second amended complaint (ECF No. 1 at 178-95) (the "Second Amended Complaint") pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 11). Plaintiff opposed (ECF No. 17), and Defendants replied. (ECF No. 18). Jurisdiction and venue are proper pursuant to 28 U.S.C. §§ 1331 and 1391(b), respectively. The Court has carefully reviewed the parties' submissions and decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78(b) and Local Civil Rule 78.1(b).

      For the reasons set forth below, Defendants' motion (ECF No. 11) is **GRANTED in part** and **DENIED in part**. **GRANTED** as to Count Four, which is **DISMISSED without prejudice**. **DENIED** as to Counts One to Three and Count Five.

I.       **BACKGROUND AND PROCEDURAL HISTORY**[1]

Plaintiff, a prisoner at State Prison, filed an initial complaint alleging civil rights violations against Defendants. (SAC at 9-12[2]). After filing an amended complaint (*Id.* at 18-22), Plaintiff filed the Second Amended Complaint. (*Id.* at 178-195).

According to the Second Amended Complaint, Plaintiff "was incarcerated and under the care and custody" of State Prison and DOC. (*Id.* at 180 ¶ 8). Plaintiff is transgender and "was the only transgender inmate being housed with all male offenders" at State Prison. (*Id.* at 180 ¶ 9). After testing positive for COVID-19, Plaintiff "was moved to a quarantine housing unit" where Plaintiff "was placed into a cell with a convicted sex offender . . . ." (*Id.* at 180 ¶¶ 12-13, 181 ¶ 14). "Due to" Defendants' "lack of supervision[,]" Plaintiff's cellmate "smoked K2[,] . . . became highly intoxicated[,]" and "attempted to" sexually assault Plaintiff. (*Id.* at 181 ¶¶ 15-16). Though Plaintiff called for help, correction officers did not respond. (*Id.* at 181 ¶ 17-18). "[A]pproximately 6 hours later[,]" a corrections officer visited the cell and Plaintiff "immediately reported the assault . . . ." (*Id.* at 181 ¶ 19).

The alleged assault was reported up the chain of command, and Plaintiff was taken "to the infirmary for an evaluation . . . ." (*Id.* at 181 ¶ 20). Plaintiff was "interviewed by the Special Investigations Division" and an "investigation" of the assault took place. (*Id.* at 182 ¶ 21). Plaintiff alleges additional incidents in support of her claims.

About ten-months after the assault, "a corrections officer made sexually charged inappropriate comments about Plaintiff's body parts indicating that her 'fat ass is going to get someone in trouble.'" (*Id.* at 182 ¶ 22). Roughly six-months later, "another corrections officer, .

---

[1] The Court accepts as true all factual allegations in the Complaint and draws all inferences in the light most favorable to the Plaintiff. *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008).
[2] The Court refers to the ECF page numbers.

. . exposed his penis to Plaintiff." (*Id.* at 182 ¶ 23). That same corrections officer "made comments to other inmates that" he "would move them next to [that] 'fag inmate'" Plaintiff. (*Id.* at 182 ¶ 24). After "report[ing]" the corrections officer, that corrections officer "raided Plaintiff's cell throwing and destroying her books and Bible" in retaliation. (*Id.* at 182 ¶ 25). Plaintiff was also "restricted from" the "law library and prohibited from making legal calls or speaking with a paralegal." (*Id.* at 182 ¶ 26).

Plaintiff alleges five causes of action: (i) a New Jersey Civil Rights Act (the "Civil Rights Act"), N.J.S.A. § 10:6-2 claim against Nogan and Russo (Count One); (ii) a New Jersey Law Against Discrimination ("LAD"), N.J.S.A. 10:5-1, *et seq.*, claim against State Prison, DOC, Nogan, and Russo (Count Two); (iii) a LAD retaliation claim against State Prison, DOC, Nogan, and Russo (Count Three); (iv) a 42 U.S.C. § 1983 failure to intervene claim against Nogan and Russo (Count Four); and (v) a § 1983 failure to train claim against Nogan and Russo (Count Five).

On November 24, 2023, Defendants filed the motion to dismiss. On January 2, 2024, Plaintiff opposed. On January 9, 2024, Defendants replied. This matter is ripe for consideration.

## II.     LEGAL STANDARD

Under Rule 8 of the Federal Rules of Civil Procedure, a pleading must include "a short and plain statement of the claim showing that the pleader is entitled to relief" and provide the defendant with "fair notice of what the claim is and the grounds upon which it rests[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation and internal quotations and ellipses omitted). On a Rule 12(b)(6) motion, the "facts alleged must be taken as true" and dismissal is not appropriate where "it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (citation omitted). A

complaint will survive a motion to dismiss if it provides a sufficient factual basis to state a facially plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

To determine whether a complaint is sufficient, the Third Circuit requires a three-part inquiry: (1) the court must first recite the elements that must be pled in order to state a claim; (2) the court must then determine which allegations in the complaint are merely conclusory and therefore need not be given an assumption of truth; and (3) the court must "assume the[] veracity" of well-pleaded factual allegations and ascertain whether they plausibly "give rise to an entitlement for relief." *Santiago v. Warminster Twp.,* 629 F.3d 121, 130 (3d Cir. 2010) (citations omitted).

### III.     DISCUSSION

#### A.     Plaintiff Pleads Plausible § 1983 and Civil Rights Act Claims (Counts One and Five)

Defendants argue Count One and Count Five against Nogan and Russo should be dismissed because they were neither personally involved in nor knew of an acquiesced to any constitutional violation; and Plaintiff failed to allege a policy that injured Plaintiff. (ECF No. 11-1 ("Defs.' Brief") at 16-21). The Court disagrees.

Courts consider § 1983 and Civil Rights Act claims together. *Surina v. S. River Bd. of Educ.*, No. 17-2173, 2018 WL 3617970, at *11 (D.N.J. July 30, 2018) (Civil Rights Act is "[P]rovide[s] New Jersey citizens with a state analogue to [ ] § 1983 actions. . . ."). To that end, courts "interprete[] the [Civil Rights Act] in terms nearly identical to its federal counterpart." *Lopez-Siguenza v. Roddy*, No. 13-2005, 2014 WL 1298300, at *7 (D.N.J. Mar. 31, 2014). The Court's § 1983 analysis therefore applies with equal force to Plaintiff's Civil Rights Act claim. *Adams v. N.J. Dept. of Corr.*, No. 21-12482, 2022 WL 1442174, at *3 n.4 (D.N.J. May 5, 2022). Thus, the Court addresses the § 1983 and Civil Rights Act claims together.

To state a § 1983 claim, Plaintiff must "prove two essential elements: (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Schneyder v. Smith*, 653 F.3d 313, 319 (3d Cir. 2011) (citation omitted). However, to state a claim against a "supervisor-defendant" for the "unconstitutional acts undertaken by subordinates[,]" additional allegations are required. *Doe v. New Jersey Dep't of Corr.*, No. 14-5284, 2015 WL 3448233, at *9 (D.N.J. May 29, 2015) (citation and internal quotations omitted).

Plaintiff must allege: "(1) liability based on an establishment of policies, practices, or customs that directly caused the constitutional violation[;]" or "(2) personal liability based on the supervisor participating in the violation of the plaintiff's rights, directing others to violate the plaintiff's rights, or having knowledge of and acquiescing to a subordinate's conduct." *Id.* at *9 (citation omitted). Indeed, "to hold a supervisor liable . . . [for their deficient policy or practice] . . . the plaintiff must identify a specific policy or practice that the supervisor failed to employ and show that: (1) the existing policy or practice created an unreasonable risk of [a constitutional] injury; (2) the supervisor was aware that the unreasonable risk was created; (3) the supervisor was indifferent to that risk; and (4) the injury resulted from the policy or practice." *Beers-Capitol v. Whetzel*, 256 F.3d 120, 133–34 (3d Cir. 2001) (citation omitted).

"Only those defendants whose inactions or actions personally caused [Plaintiff's] injury may be held liable under § 1983." *Shaw by Strain v. Strackhouse*, 920 F.2d 1135, 1147 (3d Cir. 1990). In other words, "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs; [because] liability cannot be predicated solely on the operation of *respondeat superior*." *Rode*, 845 F.2d at 1207.

5

In the Second Amended Complaint, Plaintiff alleges that the "systemic, inappropriate, and illegal treatment of Plaintiff resulted from long-standing, prison-wide culture of abuse within the institution, fostered and endorsed by Defendants through overtly discriminatory or facially neutral but discriminatory policies . . . ." (SAC ¶ 29). The policies purportedly include:

> [A] policy of discounting and/or dismissing inmate complaints of abuse, a policy of refusing to investigate fully allegations of abuse, failing to administer and enforce adequate policies and procedures for the supervision of inmates, permitting retaliation against inmates for reporting or complaining about sexual abuse and harassment, under-reporting or failing to report incidents of sexual abuse or harassment, and failing, despite knowledge of a higher potential for victimization, to train corrections officers in the proper treatment and placement of transgender inmates.

(*Ibid.*).

Plaintiff next alleges that she was the only transgender female in State Prison during the relevant period. (*Id.* ¶ 9). Moreover, that Nogan, State Prison's Administrator, and Russo, State Prison's "Compliance Manager," who "implemented and maintained deficient policies and/or customs related to training, supervision, reporting, investigations, and/or sexual assault and harassment of inmates, including Plaintiff," "directly led to the sexual assault and harassment perpetrated against her . . . ." (*Id.* ¶¶ 6, 32).

Plaintiff further alleges that Nogan was "responsible for a tacit but persistent policy, practice, or custom of failing to use due care in the hiring of corrections officers, failing to "adequately train corrections officers, and failing to adequately ensure proper investigations and response to reports of sexual assault and harassment." (*Id.* ¶ 33). As to Russo, Plaintiff alleges that he was "responsible for a tacit but persistent policy, practice, or custom of failing to adequately investigate and respond to reports of sexual abuse and harassment, and failing to adequately screen sexual victimization risk and/or implement a policy for screening of sexual victimization risk."

(*Id.* ¶ 34). Thus, Plaintiff claims that Nogan and Russo violated her "rights to substantive due process[,]" her "right to be free from cruel and unusual punishment[,]" and the Civil Rights Act. (*Id.* ¶¶ 36, 39). And that she was injured as a result. (*Id.* ¶¶ 38, 40).

Plaintiff's allegations of being the only transgender female at State Prison housed with a convicted sexual offender, sufficiently allege "risk of constitutionally cognizable harm" to "support findings of the existence of an unreasonable risk, of knowledge of that unreasonable risk, and of indifference to it." *Diecks*, 885 F.2d at 1118. Accordingly, Plaintiff sufficiently pled Counts One and Five.

### B.      Plaintiff Fails to Plead a § 1983 Failure to Intervene Claim (Count Four)

Defendants next move to dismiss Plaintiff's § 1983 failure to intervene claim against Nogan and Russo, arguing that Plaintiff has failed to plead facts to show that they knew of "specific occasions in which they failed to act." (Def.'s Br. at 22) (citation and internal quotations and brackets omitted). The Court agrees.

A state officer can be held liable "if the [officer] had a reasonable opportunity to intervene and simply refused to do so." *Smith v. Mensinger*, 293 F.3d 641, 650 (3d Cir. 2002). The "officer is only liable if there is a realistic and reasonable opportunity to intervene." *Id.* at 651.

Here, Plaintiff alleges that Nogan had "actual and/or constructive knowledge that Plaintiff" was "being subjected to repeated sexual harassment and retaliation by corrections officers" and that they "failed to fulfill" their "obligation to intervene" by "prevent[ing] the use of excessive force, prevent cruel and unusual punishment," prevent "the denial of the due process right to bodily integrity" and "conduct[] investigation of sexual abuse and/or harassment" and not "adequately screen[ing] sexual victimization risk and/or implement a policy for [such] screening . . . ." (SAC ¶¶ 59-60). These allegations are insufficient to state a claim.

7

First, Plaintiff's allegation that Nogan and Russo "effectively assisted other inmates and corrections officers in improperly and illegally subjecting Plaintiff to sexual abuse and harassment" is conclusory. (*Id.* ¶ 61). Second, Plaintiff pleads no facts beyond the bald allegation that Defendants "had ample opportunity and unquestioned authority to" intervene. (*Id.* ¶ 59).

While Plaintiff alleges that she filed a grievance and made a PREA report, allegations that grievances were sent to an administrator are generally insufficient to establish supervisory liability, absent a plausible allegation that the supervisor had contemporaneous knowledge of the incident and either directed or acquiesced in it. *See, e.g.*, *Folk v. Prime Care Med.*, 741 F.App'x 47, 51 (3d Cir. 2018) (affirming dismissal of claims against warden and others, based on allegation they had received grievances stating, that "[a]lthough some of these defendants were apparently involved in responding to some of Folk's prison grievances, there are no allegations linking them to the underlying incidents and thus no basis for liability based on those later grievance reviews."); *Alexander v. Gennarini*, 144 F.App'x 924, 925 (3d Cir. 2005) (per curiam) ("Section 1983 liability cannot be found solely on the basis of respondeat superior.") (internal citation omitted).

In short, the Second Amended Complaint is devoid of facts to suggest that Nogan and Russo had contemporaneous knowledge of the assault or harassment, had an opportunity to intervene, or refused to do so. Thus, the Court dismisses Count Four without prejudice.

### C. Plaintiff Pleads Plausible LAD Claims (Counts Two and Three)

Defendants argue that because Plaintiff does not allege Defendants "acted out of discrimination or retaliation toward her[,]" the LAD claims should be dismissed. (Defs.' Br. at 23-24). In opposition, Plaintiff directs the Court to Paragraphs 16-26, 29, and 59-61, which contain the LAD claims. (ECF No. 17 at 15-16). The Court finds these allegations sufficient.

The LAD "provides that all persons shall have the opportunity to obtain all the accommodations, advantages, facilities and privileges of any place of public accommodation without discrimination because of sex." *Jones v. Pi Kappa Alpha Int'l Fraternity, Inc.*, 431 F. Supp. 3d 518, 531 (D.N.J. 2019) (citations and internal quotations, brackets, and ellipses omitted). "To state a claim under the public accommodation theory of the NJLAD, a plaintiff must allege, (1) defendant operates a place of public accommodation, (2) the plaintiff is a member of a protected class, and (3) he or she was denied equal treatment on the basis of his or her membership in a protected class." *K.J. v. J.P.D.*, 659 F. Supp. 3d 471, 477 (D.N.J. 2023) (citation and internal quotations omitted). In addition to stating the elements of an LAD claim, Plaintiff must allege that State Prison is a place of public accommodation.

"The definition of a place of public accommodation is not so broad as to include the services provided by a state agency within the meaning of public accommodation[,]" but "[i]nstead, it refers to facilities maintained for the use of the general public." *K.J. ex rel. Lowry v. Div. of Youth and Family Svcs.*, 363 F. Supp. 3d 728, 750 (D.N.J. 2005) (citation omitted). However, "New Jersey district courts have repeatedly found that correctional facilities are places of public accommodation under" LAD. *Freeman v. McDonnell*, No. 18-7802, 2021 WL 395875, at *3 (D.N.J. Feb. 4, 2021) (citations omitted). Accordingly, State Prison falls under the LAD. Thus, the Court proceeds to analyze Plaintiff's supporting allegations.

The anti-retaliation provision of the LAD provides that:

> It shall be . . . unlawful discrimination:
> . . . .
> For any person to take reprisals against any person because that person has opposed any practices or acts forbidden under this act or because that person has filed a complaint . . . or to coerce, intimidate, threaten or interfere with any person in the exercise or enjoyment of, . . . any right granted or protected by this act.

N.J.S.A. 10:5-12(d). This aspect of the NJLAD "is broad and pervasive, and must be seen as necessarily designed to promote the integrity of the underlying anti-discrimination policies of the [NJLAD] by protecting against reprisals 'any person' who has sought to protect his or her own rights not to be discriminated against. . . ." *Quinlan v. Curtiss-Wright Corp.*, 204 N.J. 239, 259 (2010) (citation omitted).

Plaintiff alleges that she was the only transgender female inmate in State Prison during the relevant period. (SAC ¶ 10). Further, that corrections officers made "sexually charged inappropriate comments" and that and one officer "exposed his penis to Plaintiff." (*Id.* ¶¶ 22-23). Plaintiff also alleges that after she filed a grievance and a PREA report regarding these behaviors, officers retaliated against her through cell searches, destruction of her property, and restriction of access to the law library and legal telephone calls. (*Id.* ¶¶ 25-26). Moreover, that this treatment was a result of a "long-standing, prison-wide culture of abuse" fostered by the Defendants. (*Id.* ¶ 29). Specifically:

> [O]vertly discriminatory or facially neutral but discriminatory policies including but not limited to a policy of discounting and/or dismissing inmate complaints of abuse, a policy of refusing to investigate fully allegations of abuse, failing to administer and enforce adequate policies and procedures for supervision of inmates, permitting retaliation against inmates for reporting or complaining about sexual abuse and harassment, under-reporting or failing to report incidents of sexual abuse or harassment, and failing, despite knowledge of a higher potential for victimization, to train corrections officers in the proper treatment and placement of transgender inmates.

(*Id.* ¶ 29). Plaintiff also alleges specific facts as to Counts Two and Three.

In support of Count Two, Plaintiff alleges that Defendants "maintained deficient policies and/or customs related to training, supervisions, reporting, investigations, and/or sexual assault and harassment of inmates," which led to Plaintiff being "discriminated against, sexually harassed,

sexually abused, and subjected to a hostile environment because of her gender and/or sex and/or sexual orientation . . . ." (*Id.* ¶¶ 32, 43). In support of Count Three, Plaintiff alleges that officers retaliated against her for "reporting the sexually harassing and/or abusive conduct being perpetrated against her . . . ." (*Id.* ¶ 51). Also, that Defendants "are responsible for retaliatory acts perpetrated against [her] because" they were "negligent" in failing to "appropriately hire, retain, and supervise" the officers and/or for failing to "enact or enforce appropriate preventative, reporting, or investigative anti-harassment and abuse policies . . . ." (*Id.* ¶¶ 51, 54).

The Second Amended Complaint sufficiently pleads facts to suggest that Defendants' policies or lack thereof may have violated the LAD. Thus, Counts Two and Three survive.

### IV.     CONCLUSION

Based on the foregoing, Defendants' motion to dismiss (ECF No. 11) is **GRANTED in part and DENIED in part**. An appropriate Order accompanies this Opinion.

DATED: May 13, 2024

s/ Julien Xavier Neals
**JULIEN XAVIER NEALS**
United States District Judge